UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANDREW U. D. STRAW, ) | |
| CHAIRMAN OF DISABILITY ) | Case No.: 1:17-cv-1797 |
| PARTY OF INDIANA, ) | |
|     *Plaintiff*, ) | Hon. |
| v. ) | Judge Presiding |
| STATE OF INDIANA, ) | Hon. |
|     *Defendants*. ) | Magistrate Judge |
| ) | Jury Trial Demanded |

## VERIFIED COMPLAINT TO PROTECT DISABILITY RIGHTS

I, *plaintiff* Andrew U. D. Straw, Founder of the Disability Party of United States, Chairman of Disability Party of Indiana, and Disability Party candidate for U.S. Senate in Indiana in 2018, seek relief from the State of Indiana's election laws with regard to ballot access and signatures required, under the ADA, Title II, the Indiana and federal Bills of Rights:

## BACKGROUND FACTS

1.  I am a disability rights advocate and have used the ADA, Title II, to sue the City of South Bend, Indiana, as well as the Villages of Streamwood, Bloomingdale, Glendale Heights, and the City of Elgin for blocking handicap parking, sidewalks, *inter alia*. The County of Kane in Illinois settled with me in 2017, as did the City of South Bend in Indiana. *Straw v. Village of Streamwood*, 17-1867 (7th Cir.); *Straw v. South Bend*, 3:16-cv-342-JD-MGG (N.D. Ind.).

2. I am disabled from my service to the Indiana Supreme Court, and broke both of my legs and my hip, as this Court is aware. I was adjudicated a "qualified person with a disability" by the Northern District of Illinois in *Straw v. Streamwood*, 17-1867 (7th Cir.). I also have disabilities from poisoning as a child on military bases where my father served prior to his honorable Vietnam duty. *Straw v. United States*, 16-17573 (11th Cir.); *Straw v. United States*, 1:17-cv-00560-EGB (U.S. COFC).

3. My struggles with disability discrimination in the Democratic Party, the Republican Party, and the Green Party have led me to create a new party that is committed to disability rights and access. I created Disability Party on February 5, 2013. The Indiana chapter has 469 Facebook likes and the national party has 1,257 likes as of May 30, 2017. I estimate that most of the Facebook likes are people with disabilities who support the "access & opportunity" message of my party. I know for a fact that our Michigan and New Jersey state chairs use power wheelchairs due to disability and paralysis. Others are blind or deaf. When I get migraines from the base poisoning and stress, I sometimes become blind in both eyes myself.

4.     This party has an overseas presence, with 262 likes in New Zealand. Disability rights advocates in Bangladesh have inquired about setting up a chapter there.

5.     Disability Party wishes to become a third party or minor party in Indiana like the Libertarian Party so that we can support disabled people all across the State of Indiana in becoming politically active. The ADA mentions social activity as one of the areas of discrimination that oppresses people with disabilities. 42 U.S.C. § 12101(a):

> (a) Findings
> The Congress finds that
> (1) physical or mental disabilities in no way diminish a person's right to **fully participate in all aspects of society**, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination;
>  (3) discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, **voting**, and access to **public services**;

6.     The means to become a third party that gets to appoint candidates across the state is by gathering 2% of the statewide vote for Indiana Secretary of State in the last election for that office's geographic area in valid voter signatures, and then also getting 2% of the vote in that district

in the election for Secretary of State. IC 3-8-6-1 ff. This system amounts to needing to win an election in signatures as well as votes. The vote total in 2014 for Indiana Secretary of State was 1,334,995. 2% of 1,334,995 is <u>**26,699**</u> (rounded down).

7. The Republican and Democratic candidates for Indiana Secretary of State are chosen in convention and there is no voter signature requirement imposed on them.

8. They need sign only their name, and that means the burden is 26,699x heavier on Disability Party, by comparison. This burden is irrational in addition to discriminatory in effect. Smaller, newer parties should have a *lower burden* than an established, larger party simply because they are just starting and obviously would not have the same base of support without being on the ballot a few times.

9. I witnessed the Indiana Democrats choosing Vop Osili at their state convention in 2010.

10. Republicans and Democrats need to get 10% of the vote for this office to continue such major party status and conduct primaries.

11. The Libertarian candidate for Indiana Secretary of State needs to obtain no signatures either, but only needs to get 2% of the statewide vote

to continue this status for that party. Libertarians have achieved this level every 4 years since obtaining the special status under chapter IC 3-8-6.

12.  Major party candidates for U.S. Senate need only gather 4,500 signatures, 500 per congressional district, for primary ballot access.

13.  Major party candidates for U.S. House need collect no signatures to get on the ballot for the primary election.

14.  In short, major party candidates are given a very heavy advantage for no reason besides having been established a long time ago.

15.  Major party officeholders in both parties have shown hostility toward the ADA in the current Congress. HR 620: "ADA Education and Reform Act of 2017."

16.  People with disabilities should be able to run for Congress and be on the ballot as a Disability Party candidate so their voices are heard on such critical matters of importance to them as HR 620. The Indiana signature requirements make it high impossible for a disabled person to run for federal office and successfully get on the ballot.

17.  Minor party candidates for statewide office need to collect the 2% number mentioned above. In other words, as a candidate for U.S. Senate

for Disability Party, I must collect about 6x as many signatures statewide as my major party competition.

18. These signature requirements are **barriers** that have a **disproportionate negative impact on people with disabilities** because people with disabilities tend to have less money and more physical pain collecting signatures. I experienced this when I ran for U.S. House in the 8th District of Illinois and my legs and body hurt collecting signatures.

19. It is easy to see why it hurts when you look at my x-rays.[1] That pain deterred me from trying after a while and I did not get the prescribed number because of the pain.

20. I am in fact qualified for U.S. House or U.S. Senate under Article I of the Constitution. I am over the age of 30, a natural born citizen for the past 48 years, and I will live in Indiana by Election Day. I was even born on a U.S. Navy base hospital in North Carolina while my father was preparing for his Vietnam duty.

21. I have disabilities from my father's service and disabilities from my own service to the People of Indiana when I broke both my legs on the

---

[1] www.andrewudstraw.com

way to work at the Indiana Supreme Court. Deference to my sacrifices means my party should get access to the ballot **without causing me pain**.

22. The impact of imposing gargantuan signature requirements is that my party and I have been deterred from trying to get minor party status in Indiana.

23. We have been deterred from running for *any Indiana office* due to the heavy burden imposed by the State of Indiana under IC 3-8-6.

24. Indiana has a history of discrimination against people with disabilities, me in particular. *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir.); *Straw v. Indiana Supreme Court*, 16-1346 (On petition for certiorari).

25. One should not forget the 1907 Indiana Eugenics Law that violently sterilized people with disabilities. Indiana has a history of discrimination and the state legislature has apologized for it, but that is not enough. People with disabilities need political power so that they can oppose laws that discriminate and officials who discriminate.

26. Hoosiers with disabilities should not be forced to run as a Republican or a Democrat when those parties have discriminated and continue to create obstacles like the signature requirements.

27. This Court has a history of not protecting me from the discrimination by the State of Indiana and its highest court. *Straw v. Magnus-Stinson*, 16-1346 (On petition for certiorari) I ask it to protect disabled people who want to run under Disability Party by clearing the way now.

28. People with disabilities need radical political reform that only they can provide as an organized group in Indiana, and that is why the playing field must be flattened for one election, one political party, one office.

## STANDING AND OTHER LEGAL ARGUMENTS

29. The U.S. Supreme Court has laid out the requirements for standing in a civil rights act case. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972). This Civil Rights Act of 1968 case shows that Article III standing can be created through Congress passing a civil rights act that gives a particular group the right to sue, and violation of the terms of the Act is all the injury an "aggrieved party" needs to show.

30. The *Fiedler* case from Maine showed that *Trafficante*'s 9-0 reasoning applies in the case of the ADA. *Fiedler v. Ocean Properties Ltd.*, 683 F. Supp. 57 (D. Maine 2010).

31. The Trafficante rule was mentioned positively 20 years later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

32. Disability Party and I have the right to damages under the ADA, Title II, per *Barnes v. Gorman*, 536 U.S. 181 (2002).

33. The State of Indiana has no immunity under the ADA, Title II: 42 U.S.C. § 12202. The lack of immunity was discussed in *Tennessee v. Lane*, 541 U.S. 509 (2004), because Congress has abrogated 11th Amendment immunity.

## COUNT I: INDIANA REQUIREMENT OF 26,669 SIGNATURES SHOULD BE WAIVED FOR ONE ELECTION, ONE OFFICE, ONE PARTY

34. People with disabilities make up at least 19 percent of the population, according to the U.S. Census.[2] Indiana's Statewide Voter Registration webpage shows that when I checked as of May 31, 2017, there were 4,363,203 registered voters in the State of Indiana.[3] 19% times 4,363,203 is **829,008 registered voters with disabilities**, assuming

---

[2] https://www.census.gov/newsroom/releases/archives/miscellaneous/cb12-134.html

[3] https://indianavoters.in.gov/PublicSite/PublicMain.aspx

the same percentage of voters has disabilities. This does not even count family members and friends of people with disabilities.

35. The State of Indiana justifies its burdensome system on Disability Party by saying the Party must demonstrate it deserves ballot access by showing it has the support of 2% of the Secretary of State voters to show that it has a natural constituency.

36. However, people with disabilities have a much harder time gathering that many signatures, even if the natural support base of disabled voters is 829,008 registered voters who have disabilities, and several times this number in family and friends.

37. If Disability Party's candidate for Indiana Secretary of State received just 3% of the presumed number of registered disabled voters, this would be enough for ballot access like the Libertarian Party.

38. We believe the U.S. Bill of Rights (Am. I & V) and the Indiana Bill of Rights provisions that correspond to the First and Fifth Amendments to the U.S. Constitution also support giving people with disabilities a political choice that up to now has been suppressed by ballot access rules and signatures in no way required by the Constitution, state or federal.

39. I am the state chair of Disability Party of Indiana and I see no reason to appoint someone to run for Indiana Secretary of State unless this Court ORDERS the State of Indiana to allow that person ballot access without needing any signatures for one election, just like the Democrats, Republicans, and Libertarians. We ask for the Court to ORDER this to level the playing field for one election, one party for disabled Hoosiers, one office to establish party status.

40. If, after being on the ballot once, we are unable to obtain 2% of the Secretary of State vote, we would accept that our support level is too low and will not seek this relief again. We believe we will get more than 2% because we know about how many disabled voters there are, but the only way to know this is to put our candidate on the ballot without causing us physical pain.

## COUNT II: INDIANA DISCRIMINATION REQUIRES COMPENSATION

41. If an injunction is not granted to remove the signature requirement, Disability Party of Indiana and I demand compensation under *Barnes v. Gorman* to allow us to gather enough signatures to meet the ballot access requirements. We estimate that it will cost $5 per signature to pay

someone to gather this many signatures, and that is what we ask. We also ask enough to pay for 40,000 signatures so that the Democrats and Republicans are unable to challenge the signatures and so keep us off the ballot.

42.  We therefore demand $5 x 40,000 = $200,000 for the 2018 election of a Secretary of State candidate, this amount to be used to collect signatures. We of course would have other statewide candidates on the CAN-19 petition.

## PRAYER FOR RELIEF

43.  Disability Party and I seek an injunction under 42 U.S.C. § 12132 & 12133 and the First and Fifth Amendments (incorporated by the Fourteenth Amendment), and the Indiana Constitution provisions that mirror the Bill of Rights, to force Indiana to waive the signature requirement for <u>one election</u> (<u>2018 General Election</u>) for <u>one office</u> and <u>one party</u>: <u>Indiana Secretary of State</u> & <u>Disability Party</u>.

44.  In the alternative, we ask for compensation under *Barnes v. Gorman*, 536 U.S. 181 (2002) to pay for professional signature gathering services, and other statewide candidates like myself may appear on these CAN-19 forms.

45. If signatures are waived for Secretary of State for this one election, we ask that the deadline for appointing a candidate be set as June 30, 2018, which appears to be the deadline for filing petitions with signatures at the Indiana Election Division.

46. If signatures are waived, Disability Party of Indiana will not seek any compensation for past discrimination.

47. We ask any other relief that this Court and a jury may deem fit under the circumstances.

## JURISDICTION AND VENUE

48. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Americans with Disabilities Act, Title II and the First and Fifth Amendments of the U.S. Constitution, as incorporated by the Fourteenth Amendment.

49. Venue properly lies in the Southern District of Indiana under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to this action occurred within this district.

I, Disability Party of Indiana Chairman Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury.

Respectfully submitted,

s/ ANDREW U. D. STRAW

1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333   Fax: (877) 310-9097
andrew@andrewstraw.com
May 31, 2017

# CERTIFICATE OF SERVICE

I, Disability Party of Indiana Chairman Andrew U. D. Straw, certify that I filed the above COMPLAINT and CIVIL COVER SHEET and attached IFP MOTION with the Clerk of this Court via the Court's CM/ECF system on May 31, 2017, and this will be served on all attorneys of record as well as permanently available through Pacer.gov. I will provide a copy via email to the office of the Attorney General of the State of Indiana, Ms. Patricia McMath, Patricia.McMath@atg.in.gov. We will seek waiver of service and will provide the waiver form to Ms. McMath.

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff*, Proceeding *Pro Se*

May 31, 2017